THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL ZIMMERMAN, Appellant.

Second Department, May 7, 1984

APPEARANCES OF COUNSEL

*John Joseph Sutter* (*Ruth C. Balkin* of counsel), for appellant.

*Patrick Henry, District Attorney* (*Mark D. Cohen* of counsel), for respondent.

OPINION OF THE COURT

MANGANO, J.

The question to be decided on this appeal is whether defendant consented to a search by the police of the trunk of defendant's daughter's car. In our view, the question must be decided in the affirmative. Accordingly, the judgment of conviction must be affirmed.

Defendant moved before Criminal Term to suppress, *inter alia,* weapons and ammunition found as a result of an alleged illegal search by the police of the trunk of defendant's daughter's car. In its decision denying that branch of

defendant's motion which sought to suppress this evidence, Criminal Term initially held, in its conclusions of law, that the police had not met their heavy burden of establishing "beyond a reasonable doubt" the voluntariness of defendant's alleged consent to the otherwise illegal search, pursuant to *People v Gonzalez* (39 NY2d 122). Although Criminal Term recognized that the failure of the police to meet their burden on the issue of consent generally requires suppression of evidence found pursuant to an illegal search, it held that suppression of the physical evidence in the case at bar was not warranted in view of the fact that (1) the police in good faith "believed the quality of the consent to be sufficient to permit them to look into the trunk" of the vehicle operated by the defendant, (2) this good faith was reasonable, based on an objective view of the circumstances, i.e., the police request to open the trunk was made "without the exercise or threat of physical or psychological pressure, or the use of the power to command", and (3) any error by the police in this regard was a mere "judgmental error".

We disagree with Criminal Term's conclusion of law regarding the issue of consent. Based on Criminal Term's findings of fact, which were amply supported by the testimony of the People's witnesses at the suppression hearing, we are of the view that the People met their burden of establishing defendant's consent to the search of the trunk.

It has been consistently held that when the People rely on consent to justify an otherwise unlawful police intrusion, they bear the "heavy burden" of establishing that such consent was freely and voluntarily given (*People v Gonzalez, supra,* p 128; *People v Kuhn,* 33 NY2d 203, 208; *Bumper v North Carolina,* 391 US 543, 548-549).

However, the People's burden is not, contrary to the holding of Criminal Term, to establish consent beyond a reasonable doubt, but to prove consent by "clear and positive" evidence (see *Judd v United States,* 190 F2d 649, 651; *Channel v United States,* 285 F2d 217, 220; *Amos v United States,* 255 US 313). Moreover, the voluntariness of the consent must be evaluated from the totality of the circumstances (*Schneckloth v Bustamonte,* 412 US 218; *People v Gonzalez, supra,* pp 128-130).

In *People v Gonzalez* (*supra*), the Court of Appeals set forth four factors to be considered by the courts in determining the voluntariness of an apparent consent:

1. "whether the consenter is in custody or under arrest, and the circumstances surrounding the custody or arrest" (p 128);

2. "the background of the consenter" (p 129);

3. "whether the consenter has been, previously to the giving of the consents, or for that matter even later, evasive or un-co-operative with the law enforcement authorities" (p 129); and

4. "whether a defendant was advised of his right to refuse to consent" (p 130).

With respect to the first factor, the Court of Appeals noted that a resisted arrest, presence of a large number of police agents, and the fact that defendant is handcuffed, would be relevant in determining whether an "apparent consent was but a capitulation to authority" (*People v Gonzalez, supra,* p 129).

With respect to the second factor, the Court of Appeals noted that a "consent to search by a case-hardened sophisticate in crime, calloused in dealing with the police, is more likely to be the product of calculation than awe" (*People v Gonzalez, supra,* p 129).

The testimony of the People's witnesses, which was accepted by Criminal Term, indicates as follows: Defendant is a middle-aged businessman who has a record of eight arrests or charges of possession of burglary tools, possession of a fraudulent check and arson, and a prior conviction for arson in the fourth degree. From the moment that defendant was initially stopped in the public parking lot of a restaurant by two policemen and asked to produce his license, registration and insurance card, he was cooperative with all of the police officers' requests. The officers at no time drew their guns. Although defendant was arrested after the officers learned that there were two outstanding warrants against him, i.e., a Family Court warrant for nonsupport and a Vehicle and Traffic warrant for driving with a suspended license, defendant appeared calm and was never handcuffed. Thereafter, in response to a request

by the police officers that he open the trunk of the car defendant said "yes", and did not seem upset or concerned. Defendant started to move toward the rear of the car, stopped and asked the officers "Is there any problem?" The officers indicated to defendant that there was no problem and again asked if defendant would mind opening the trunk. Both officers testified without qualification that defendant stated "No, come on, I'll open it for you", where- upon defendant took the keys and opened the trunk.

Although the officers conceded that they never informed defendant that he had a right to refuse to give his consent, it has been held that "[n]o one circumstance is determina- tive of the voluntariness of consent" (*People v Gonzalez,* 39 NY2d 122, 128, *supra*). Viewing the totality of the circum- stances in the case at bar within the guidelines set forth by the Court of Appeals in *People v Gonzalez* (*supra*), we are of the view that the People did meet their heavy burden of proving defendant's consent to the search of the trunk of the car.

Finally, in view of our determination, we only briefly discuss the holding of Criminal Term regarding the appli- cation of the good-faith exception to the exclusionary rule to the facts at bar. Suffice it to say, so-called "good faith violations" of the Fourth Amendment (see *United States v Williams,* 622 F2d 830, 840), are based either on judgmen- tal errors by the police concerning the existence of facts sufficient to constitute probable cause or on technical er- rors, i.e., reliance by the police on a statute later ruled unconstitutional, a warrant later invalidated or a court precedent later overruled. However, the good-faith excep- tion to the exclusionary rule (1) has not, to date, been recognized by the Supreme Court of the United States (see *Taylor v Alabama,* 457 US 687) and more importantly (2) has been rejected by the courts of this State (*People v Jennings,* 54 NY2d 518, 522-523; cf. *People v Lopez,* 95 AD2d 241, 246-250). Criminal Term's reliance on *People v Adams* (53 NY2d 1) as authority for the application of the good-faith exception to the exclusionary rule, was mis- placed. In *People v Adams* (*supra,* p 11), the Court of Appeals sanctioned good-faith reliance by the police on the apparent capability of defendant's girlfriend to consent to

the search of his apartment, based on the "exigencies of the situation, which called for immediate action."

We have reviewed defendant's remaining contentions and find them to be without merit.

TITONE, J. P., LAZER and BOYERS, JJ., concur.

Judgment of the Supreme Court, Suffolk County, rendered May 6, 1983, affirmed.

The case is remitted to the Supreme Court, Suffolk County, for further proceedings pursuant to CPL 460.50 (subd 5).