■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ODELL MORTON, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered July 12, 1984, upon a verdict convicting defendant of the crime of murder in the second degree.

On March 16, 1981, at about 10:50 P.M., defendant allegedly went to the City of Albany home of his estranged wife, Diane Morton, and shot her after the two began to argue. Tony B. Morton, Diane's son, and his girlfriend were present in the house. Tony testified that he saw defendant draw a gun from the waist of his pants and shoot Diane.

Defendant was arrested about 10 minutes after the incident in a bar near the Morton apartment and a gun was found on his person after a search. Defendant was then driven by police to the detective office garage in Albany. Officer Robert Grebert gave defendant his *Miranda* warnings in the garage at 11:10 P.M. Grebert asked him if he understood those rights, and defendant responded in the affirmative. Defendant was then taken to a police interview room where Grebert again gave defendant his *Miranda* rights and again asked if he understood them. Defendant uttered the same response. Grebert then asked defendant why he shot his wife. There was no response. At that time another officer, Detective John Pariseau, repeated the question and defendant answered, "She didn't want me with any other women. She provoked me, so I shot her." Grebert testified that defendant appeared rational and in control of his faculties. Defendant refused to give a written statement. He was subsequently indicted for murder in the second degree, tried and convicted.

The conviction was reversed by this court on the ground that the lesser included offense of reckless manslaughter should have been charged as an alternative to intentional murder (100 AD2d 637, 638). A new trial was ordered and

defendant again appeals from his conviction for murder in the second degree, including his sentence of 25 years to life imprisonment.

At trial, defendant did not deny that he fired the fatal shots. His defense was based on evidence offered to establish that he did not have the requisite culpable mental state to commit intentional murder. He is a diabetic and claimed that at the time of the shooting he was suffering from hypoglycemia, also known as insulin shock, and did not know what he was doing.

Defendant first asserts that the trial court erred in finding that he knowingly and intelligently waived his right against self-incrimination. He notes that the record does not show that Grebert ever asked him if he wished to waive his rights. Relying on *People v Campbell* (81 AD2d 300, 305), defendant argues that Pariseau's repetition of the question, "Why did you kill your wife?" was an interference with his ability to make an unpressured decision to waive his rights. We disagree.

The trial court, in the circumstances presented, could properly find, as it did, that defendant knowingly and voluntarily waived his right against self-incrimination *(see, People v Davis,* 79 AD2d 547, 548, *affd* 55 NY2d 731). A waiver need not be expressed and may be inferred from conduct *(see, North Carolina v Butler,* 441 US 369, 373). However, the defendant must be shown to have waived his rights beyond a reasonable doubt *(People v Valerius,* 31 NY2d 51).

In determining whether a waiver has been implied, the trier of the fact should consider the totality of the circumstances *(People v Chaffee,* 42 AD2d 172, 173), including an evaluation of the defendant's age, experience, education, background, intelligence and capacity to understand the warnings given him, the nature of his 5th Amendment rights and the consequences of waiving those rights *(People v Norris,* 75 AD2d 650, 652). The instant fact situation differs from that found in *People v White* (85 AD2d 787), where we found that other evidence in the record cast doubt upon whether the defendant understood his *Miranda* rights and made a voluntary and intelligent waiver thereof. The defendant in *White* was a patient in a psychiatric center who had been diagnosed as a chronic undifferentiated schizophrenic. His confession was disjointed, disorganized and failed to even mention another man who was an apparent accomplice in the commission of the crime *(supra).*

In the instant case, such doubt is lacking. There is no doubt

that defendant understood the *Miranda* warnings and, with such understanding, freely chose to answer the detective's question. Under *People v Davis* (79 AD2d 547, 548, *supra)*, this conduct was an implied waiver of his right against self-incrimination.

We find no merit in defendant's next contention that the trial court erred in allowing the prosecution to introduce on its direct case parts of the cross-examination of defendant from the first trial. The parts introduced were admissions by defendant and were properly allowed into evidence under the admission exception to the hearsay rule.

Defendant's third assignment of error, that the trial court abused its discretion in permitting two psychiatrists to testify for the prosecution regarding insulin and insulin injections, has not been preserved for review by this court because defendant, by failing to timely object at trial, waived the objection.

Defendant's argument that the sentence imposed was unduly harsh and excessive is rejected. The sentence was within the statutory parameters of Penal Law § 70.00 (2) (a) and (3) (a) (i). Moreover, defendant has a history of prior involvement with the criminal justice system dating back to 1951. Absent, as here, a showing of a clear abuse of discretion by the sentencing court, this court will not disturb a sentence *(People v Ray,* 105 AD2d 988, 989; *People v Du Bray,* 76 AD2d 976, 977).

We have examined defendant's other claims of reversible error and find them without merit. Accordingly, the judgment should be affirmed.

Judgment affirmed. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.