THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROY
CONKLIN, Appellant.

Third Department, July 14, 1988

## APPEARANCES OF COUNSEL

*E. Stewart Jones, Jr. (Robert M. Cohen* of counsel), for appellant.

*James P. Bessette, District Attorney (Valerie Friedlander* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

On the evening of November 26, 1984, Mark Pierson and Dale Trombley drove from Pierson's house in the Town of Canton, St. Lawrence County, to a farm in the Town of Chateaugay, Franklin County, for the purpose of purchasing marihuana for Pierson. They arrived in Chateaugay at approximately 7:00 P.M. and traveled down Sandy Knoll Road toward the farm where defendant resided with his girlfriend, Thea Lipp. At some point along the road, Trombley let Pierson out of the car. Trombley returned about 15 to 20 minutes later with two grocery bags containing over two pounds of marihuana, which were placed on the floor behind the driver's seat. Pierson got back into the car and they began their trip home.

Approximately one mile down the road they were stopped by Border Patrol Officer Benjamin DeLuca, who was investigating a report that an illegal alien might have been smuggled into the area. DeLuca observed the two grocery bags behind the driver's seat and Pierson agreed to show DeLuca the contents. DeLuca saw that the bags appeared to contain marihuana and placed Pierson and Trombley under arrest. At approximately 10:00 P.M. that evening, DeLuca turned Pierson, Trombley and the confiscated material over to State Police Investigator Neil Mulverhill and State Trooper Donald Roberts.

While in custody, Trombley gave a sworn written statement that he had purchased the marihuana from defendant. Based upon the statement of Trombley, an affidavit of DeLuca and Mulverhill's own affidavit, Mulverhill applied to Chateaugay Town Justice Peter K. Curtin for a warrant authorizing a search of defendant's residence for marihuana. The warrant was issued at 4:30 A.M. on November 27, 1984.

Immediately thereafter, Mulverhill and several other members of the State Police and Border Patrol drove to defendant's residence to execute the search warrant. They knocked at the front door and were admitted into the house by Lipp. They informed defendant and Lipp that they had a warrant to search the house for drugs and gave both of them *Miranda* warnings. Defendant and Lipp stayed with one officer in the kitchen while the search was conducted.

In the living room, a marihuana cigarette was found on a table. While Mulverhill was searching another room, defendant came into the room and handed Mulverhill a bag containing a few grams of marihuana which he admitted was his. After completing the search of the first floor, the officers proceeded upstairs. In a second floor bedroom, Mulverhill found a clump of marihuana on a table, 4 or 5 pieces of plant stalk material, and green dusty residue on the table and floor. Mulverhill found more marihuana on the floor at the top of the stairs and also at the threshold of the front door.

Mulverhill then went to the kitchen where defendant and Lipp were seated at the table drinking coffee. Mulverhill requested permission to search the outbuildings which consisted of a barn and a small grainery. Defendant consented and asked Lipp to get dressed and accompany the officers, which she did.

Both buildings were located approximately 100 to 150 feet from the house and were unlocked. In the loft area of the barn, an officer found two feed bags containing marihuana. In the grainery, Mulverhill found a grain bag containing marihuana hidden behind a barrel. Mulverhill returned to the kitchen with the bag and showed it to defendant. According to Mulverhill, defendant first denied knowledge of the bag, then suggested that he go back and "get the rest of it" and consented to the continued search of the building. Mulverhill returned to the grainery where he found another grain bag and two paper bags containing marihuana. Approximately 20 pounds of marihuana were confiscated from the outbuildings. Defendant was placed under arrest; Lipp, however, was not.

Defendant was subsequently indicted for criminal possession of marihuana in the first degree and criminal sale of marihuana in the first degree. A suppression hearing was held in which County Court determined that all the evidence seized was admissible. Defendant was ultimately convicted of both charges and was sentenced to two prison terms of 6 to 12 years, to run concurrently, and two $5,000 fines. This appeal by defendant ensued.

■ ■ Defendant's challenge to County Court's suppression ruling is unavailing. Trombley's statement satisfied both prongs of the *Aguilar-Spinelli* test *(see, Spinelli v United States,* 393 US 410; *Aguilar v Texas,* 378 US 108). Trombley's description of his purchase from defendant was based upon his own direct participation in the transaction, satisfying the

requirement of demonstrating the informant's basis of knowledge (see, People v Bigelow, 66 NY2d 417, 423). The statement was under oath and against his penal interest, which is sufficient to show his reliability as an informant (see, People v Stafford, 113 AD2d 995, 996). A nighttime execution of the warrant was authorized, since the warrant application specified that the evidence sought could be removed or destroyed (CPL 690.35 [3] [a] [ii]; see, People v Wollenberg, 123 AD2d 413, 414-415). Nor do we agree with defendant's contention that his and Lipp's consent to the search of the outbuildings was not voluntary. Defendant was not arrested until after the completion of the entire search and Lipp was never arrested. Neither was handcuffed, and they were free to move about on the property and did so at points during the search. Both of them were entirely cooperative with the police. Defendant had knowledge of police procedures as a result of prior arrests. Under these circumstances, County Court had ample support in the record for its conclusion that the consents were voluntarily given (see, People v Gonzalez, 39 NY2d 122, 128-129; People v Zimmerman, 101 AD2d 294, 296-297). The fact that defendant and Lipp were not advised of their right to refuse to consent does not by itself require a different conclusion (see, People v Zimmerman, supra, at 297).

Defendant also contests the sufficiency of the evidence adduced at trial. With respect to his conviction of the sale of marihuana, defendant contends that there was no independent evidence to corroborate the accomplice testimony of Trombley or Pierson that a sale, in fact, occurred. Initially, the People concede that Trombley and Pierson, as purchasers of the marihuana, were accomplices whose testimony requires corroboration (CPL 60.22). It is also uncontested that defendant never requested jury instructions on corroboration and none were given by County Court. Thus, defendant has waived his right to contest this error on appeal (CPL 470.05 [2]; see, People v Lipton, 54 NY2d 340, 351; People v Smith, 103 AD2d 859; People v Pelc, 101 AD2d 995). However, because defendant sought an order of dismissal based upon the insufficiency of evidence at the close of the People's case, defendant effectively preserved the issue of whether the necessary corroborative evidence had been introduced (see, People v Rugg, 91 AD2d 692, 693).

The corroboration requirement demands a "quantum of independent, material evidence * * * sufficient * * * to support a reasonable inference that defendant was somehow

implicated in the commission of the crime" *(People v Springer,* 127 AD2d 250, 254, *affd* 71 NY2d 997). Moreover, "it does not matter that individual pieces of evidence could also give rise to nonincriminatory inferences or be subject to an innocent connotation" *(supra,* at 254). In the instant case, Pierson and Trombley were apprehended in close proximity to defendant's house, coming from that direction, immediately following the alleged sale. In addition, the large quantity of marihuana found on the farm was indicative of a drug-selling operation. Also, Mulverhill testified that, in searching the house, he found a trail of marihuana from the top of the stairway down to the front door. He further testified that the trail of marihuana, combined with the wide dispersal of the drug in an upstairs room and the presence of plant stalks led him, as an experienced drug enforcement officer, to believe that the room was used for processing the drug. Based on the foregoing, we are persuaded that there was sufficient corroborative evidence to sustain defendant's conviction for the sale of marihuana.

Likewise, the evidence of defendant's long occupancy at the farm, of his important functions and responsibilities in the management thereof, and his statements to the officers in the course of the search were cumulatively sufficient to establish knowing constructive possession through dominion and control *(see, People v Torres,* 68 NY2d 677, 678).

Defendant also contends that several evidentiary rulings constituted reversible error. However, only two of these rulings merit discussion. The first concerns County Court's decision to permit Trombley to testify, over defense counsel's objection, that he had purchased marihuana from defendant on 4 or 5 prior occasions. Defendant contends that this evidence was admitted for no other reason than to raise an inference that defendant is of a criminal disposition and, thus, was not properly introduced under *People v Molineux* (168 NY 264, 291). We disagree. Defendant's defense to the charges, as described by his counsel's opening statement, was that Trombley had hidden the marihuana in the unlocked outbuildings without defendant's knowledge. Evidence of prior drug sales by defendant was thus properly introduced on the People's direct case to counter the defense's claim that the presence of drugs in large saleable quantities was unknown to defendant *(see, People v Sbraccia,* 92 AD2d 628, 629; *see also, People v Alvino,* 71 NY2d 233, 241-243).

A more difficult question is presented by County Court's decision to admit evidence, in the form of a State Police

blotter, which indicated that Lipp placed two phone calls to the police at approximately 7:00 A.M. on November 27, 1984; the first phone call reported $11,400 missing from her residence, and the second call, a short time later, apparently stated that the money had been found. These calls were considered relevant because the defense had brought out the fact that $2,000, the amount defendant allegedly received from Trombley when the drugs were sold, was never recovered when the search warrant was executed. Thus, the prosecution sought to show through Lipp's phone calls, that a large amount of money was actually present in the house as a means to counteract the unfavorable inference flowing from the missing evidence.

Assuming, without deciding, that the blotter was a business record for the purpose of excepting it from the rule prohibiting hearsay, the contents of the blotter pertaining to Lipp required its own exception to the hearsay rule since it was introduced for the truth of the matter asserted, i.e., as evidence that money was present in the house. In our view, the only hearsay exception even arguably applicable is to consider the declarations by Lipp to be those of an unindicted coconspirator *(see, People v Salko,* 47 NY2d 230, 237; *People v Rastelli,* 37 NY2d 240, 244, *cert denied* 423 US 995). This exception, however, permits the introduction of the hearsay declaration only when a prima facie case of conspiracy has already been established *(see, People v Salko, supra,* at 237). In the instant case, there was no such prima facie evidence of conspiracy and, hence, it was error to receive the police blotter report of Lipp's alleged calls. The next question is whether this was reversible error under *People v Crimmins* (36 NY2d 230, 241-242). First, we are persuaded that there was overwhelming proof of defendant's guilt, consisting of the large quantity of drugs recovered, the testimony of Trombley, Mulverhill's testimony that the marihuana found throughout the house was indicative of processing for sale, as well as the palpably improbable defense that Trombley had hidden the drugs in the outbuildings without defendant's knowledge. In light of this overwhelming proof of guilt, we do not conclude that there is a "significant probability, * * * that the jury would have acquitted * * * defendant" had the police blotter not been admitted into evidence *(supra,* at 242; *see, People v Murphy,* 128 AD2d 177, 184, *affd* 70 NY2d 969).

Finally, we have considered defendant's remaining contentions and find them to be unpreserved or without merit.

MAHONEY, P. J., CASEY, YESAWICH, JR., and MERCURE, JJ., concur.

Judgment affirmed.