■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH MIKEL, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Rosato, J.), rendered March 21, 1988, convicting him of criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree, criminal possession of a controlled substance in the seventh degree (three counts), criminal use of drug paraphernalia and the Vehicle and Traffic Law infractions of riding in the front seat of a motor vehicle without being restrained by a seat belt and consuming an alcoholic beverage in a motor vehicle being driven upon the public highways, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and statements made by the defendant to law enforcement officials.

Ordered that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and statements are granted, the plea is vacated, and the case is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith.

Upon observing the defendant riding as a passenger in an automobile on Interstate Highway 95 without wearing a seat belt, a State Trooper signaled to pull over. When he ordered the defendant out of the vehicle, the Trooper observed a beer bottle between his feet. Since the defendant was unable to produce identification, the Trooper ran a computer check to verify the information provided by the defendant with regard to his identity. While awaiting confirmation from the computer, the Trooper questioned the defendant as to where he was coming from before the car in which he was riding was stopped. The defendant stated that he had been in New York

City playing or watching basketball and talking to girls. The Trooper testified that he found a "discrepancy" in the defendant's account and added that his suspicions were aroused by the fact that the defendant was not wearing proper attire to play basketball. The Trooper then radioed another Trooper for assistance.

After obtaining the defendant's version of his day's activities, the second Trooper approached the driver of the vehicle and questioned him in a separate location as to what he had been doing earlier in the day. The driver told him that he had been driving around the city all day and that he had not been to a park.

The Trooper ordered the driver out of the car and frisked him for weapons. After ascertaining that the driver did not have a weapon concealed on his person, the Trooper informed him that his story conflicted with that of the defendant and asked him if he had been involved in any criminal activities while he was in the city. After the driver, who had committed no traffic infraction, denied any wrongdoing, the Trooper asked him if he could search his vehicle. When the driver declined to give the Trooper permission to search, the Trooper said "[w]hy not? You just told me that you guys weren't involved in anything. If you weren't involved in anything and there is nothing wrong, then why can't I search the vehicle?" The driver then reluctantly agreed to allow the Trooper to search the car where he discovered a quantity of narcotics.

After the driver was handcuffed, the defendant was also taken into custody and advised of his *Miranda* rights, which the defendant stated that he understood. When the Trooper asked if he would speak to him, the defendant did not respond. The Trooper immediately asked the defendant where the rest of the drugs were, at which point the defendant stated that the Troopers had recovered everything. However, more narcotics were recovered from other areas of the car and from the defendant's clothing.

The Supreme Court determined that the stop of the vehicle was lawful, as were the questioning of the defendant and the search of the vehicle in which he was traveling. The court further found that the defendant voluntarily waived his *Miranda* rights. We disagree.

We note that the People have not contested the defendant's standing to challenge the stop and search of the vehicle. We agree with the Supreme Court that since the defendant was not wearing a seat belt, the Trooper properly stopped the

vehicle in which he was traveling for a violation of Vehicle and Traffic Law § 1229-c (3) *(see, People v Villanueva,* 137 AD2d 852; *People v Williams,* 137 AD2d 569; *People v Mathis,* 136 AD2d 746). The record reveals, however, that the traffic infraction was used as a mere pretext to interrogate the defendant and the driver on unrelated, nonexistent crimes and to search their vehicle *(see, People v Mezon,* 140 AD2d 634; *People v Llopis,* 125 AD2d 416; *People v Seward,* 91 AD2d 1005; *People v Flanagan,* 56 AD2d 658). The Troopers exceeded the bounds of a normal traffic stop by detaining the occupants of the vehicle for an extended period of time in an attempt to obtain information unrelated to the traffic infraction *(see, Berkemer v McCarty,* 468 US 420; *Terry v Ohio,* 392 US 1; *cf., People v Mathis, supra,* at 146).

The frisk of the driver, who had not committed any traffic violations, was improper since the Trooper's articulated reason for fearing for his safety, the size of the driver, did not justify a search for weapons *(see, People v Howell,* 49 NY2d 778; *cf., Pennsylvania v Mimms,* 434 US 106; *People v McLaurin,* 70 NY2d 779). We further find that although the driver was not in custody at the time he purportedly consented to the search of his vehicle, the People failed to meet their burden of proving the voluntariness of his consent *(see, People v Gonzalez,* 39 NY2d 122; *People v Zimmerman,* 101 AD2d 294; *cf., People v Mezon, supra,* at 634; *People v Buggs,* 140 AD2d 617). Rather, the record reveals that the driver, after first declining to give the Trooper permission to search his vehicle, reluctantly agreed after he was accused of committing unrelated, nonexistent crimes. As the United States Supreme Court has stated "[w]here there is coercion there cannot be consent" *(Bumper v North Carolina,* 391 US 543, 550; *see also, People v Gonzalez, supra,* at 122).

Finally, although a waiver of *Miranda* rights need not be expressed but may be inferred from conduct *(North Carolina v Butler,* 441 US 369; *People v Davis,* 55 NY2d 731; *People v Morton,* 116 AD2d 925), the People failed to prove beyond a reasonable doubt that the defendant voluntarily waived his rights *(see, People v Valerius,* 31 NY2d 51). The defendant's silence in response to the inquiry whether he wanted to answer questions cannot be deemed to constitute an effective waiver of his right to remain silent or a consent to be questioned *(see, People v Schroder,* 71 AD2d 907; *cf., People v Davis, supra,* at 731; *People v Morton, supra,* at 925). "[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that

a confession was in fact eventually obtained" *(Miranda v Arizona,* 384 US 436, 475; *People v Schroder, supra,* at 907). Unlike the defendants in *People v Davis (supra),* and *People v Morton (supra),* no evidence was presented to indicate that this 19-year-old defendant had previous contacts with the law. In light of the overzealousness displayed by the officers in their investigation of this traffic infraction, it cannot be said that the defendant exercised a knowing and intelligent waiver of his *Miranda* rights.

The subsequent seizure of the narcotics from the defendant's clothing following his search at the police barracks was not sufficiently attenuated from the earlier improper procedures. Accordingly, the physical evidence recovered from the defendant's clothing must also be suppressed as fruit of the poisonous tree *(see, Wong Sun v United States,* 371 US 471). Bracken, J. P., Rubin, Spatt and Sullivan, JJ., concur.