OPINION OF THE COURT
Mary E. Bednar, J.
The respondent, Mark A., was arrested and charged on May 31, 1989, with criminal possession of a weapon in the second *956 degree (Penal Law §265.03) and unlawful possession of a weapon by a person under 16 (Penal Law § 265.05). He has moved this court for suppression of the physical evidence seized from him and a corespondent at the time of his arrest, to wit: a clip containing 16 9-mm cartridges and an Intertech 9-mm Luger machine pistol. A Mapp hearing was held on August 30, 1989, and written arguments on the issues raised therein were submitted to the court by both the presentment agency and the respondent.
FINDINGS OF FACT
On May 21, 1989, at approximately 12:30 a.m. Police Officer John Ryan observed the respondent Mark on the lower level subway mezzanine area of the Greyhound bus area in the Port Authority Bus Terminal. Although there were other people in the area, the respondent was standing alone, looking around. He was carrying a shoulder bag and did not appear disheveled or disoriented.
Thinking the respondent might be a runaway, Officer Ryan approached him and began questioning him as follows:
Q. — "What are you doing here?”
A. — "Taking a bus.”
Q. — "How old are you?”
A. — "Fifteen.”
Q. — "Are you alone?”
A. — "No.”
Q. — "Where are you going?”
Q. — "Where are you going?”
A. — "To Boston.”
Q. — "By yourself?”
A. — "Yes.”
Q. — "Do you have any I.D.?”
A. — "No.”
At this point, Officer Ryan determined that respondent’s answers were vague, and that his "hesitation” in answering justified taking him to the Port Authority Youth Services Office for further investigation. The officer told respondent he would have to accompany him there.
According to Officer Ryan, a youth who gives vague and insufficient answers to a police officer’s inquiry and is, therefore, a suspected runaway, is taken to the youth office where *957 attempts would be made to contact the child’s parents. In this case, prior to taking the respondent to the youth office, the officer did not ask respondent for any information concerning his parents, nor did he ask for any verification of respondent’s purported destination.
Before escorting the respondent to the Youth Services Office, Police Officer Ryan frisked him for weapons, and found none. After the pat down, Officer Ryan asked to search respondent’s bag, and respondent acquiesced. The officer took the bag from the respondent, felt the outside of the bag, and felt mostly soft, clothing-like objects. At the bottom of the bag the officer felt a seven-inch by one-inch rectangular object which he immediately suspected was a switchblade knife. Officer Ryan unzipped the bag and, after searching through the bag, he retrieved a gun clip containing 16 9-mm bullets.
The officer asked the respondent where the rest of the gun was, and the respondent pointed out a person who had just come to the nearby escalator. From that person Officer Ryan recovered an Intertech 9-millimeter machine pistol. The respondent was then placed under arrest and brought to the youth office where he was read his Miranda rights.
Of note in these findings is Officer Ryan’s testimony concerning his general policy on patrol in the Port Authority: after 8:00 p.m., any youth unaccompanied by an adult will be stopped and questioned as a possible runaway.
CONCLUSIONS OF LAW
Family Court Act § 718 provides the authority for a police officer to return to parents a child he reasonably believes to be a runaway. This statute provides, in part, that: "For purposes of this action, a police officer or peace officer may reasonably conclude that a child has run away from home when the child refuses to give his name or the name and address of his parent or other person legally responsible for his care or when the officer has reason to doubt that the name or address given are the actual name and address of the parent or other person legally responsible for the child’s care.”
The Practice Commentary to this section (McKinney’s Cons Law of NY, Book 29A) suggests that the officer’s reasonable opinion should be supported by probable cause to believe that a child has run away. (See also, Matter of Irving S., 36 AD2d 642.)
In Matter of Terrence G. (109 AD2d 440), the court noted the *958 extensive problem of runaway children in the Times Square area of New York City. In that case, the respondent was a 15 year old from South Carolina who could provide no local information for Port Authority police. The court found that "Respondent’s presence in an area known to be a national gathering place for runaways, his admission that he was only 15 years old and that he had come to New York from a distant State, and his inability or refusal to provide the police with a local address not only satisfy the criteria of section 718 as to what constitutes a 'reasonable opinion’ that a child is a runaway, but indeed make any other conclusion as to the boy’s status highly speculative, to say the least.” (Matter of Terrence G., supra, at 444 [emphasis added].)
The Terrence G. court held that once the criteria of Family Court Act § 718 are satisfied, an officer has probable cause to detain a child to ascertain his status. Although such detention is noncriminal, police officers may conduct a pat-down search of the suspected runaway in order to insure the safety of the child and other children held in detention, as well as the safety of the officers themselves. (Matter of Terrence G., supra.) Thus, concerns primarily for a respondent’s protection and safety while in a detention area justify the limited intrusion of a pat-down search.
The respondent contends that Officer Ryan lacked a sufficient predicate for detention under Family Court Act § 718. This court agrees. Under Family Court Act § 718 probable cause exists to believe a child is a runaway where the child refuses to give his/her name or that of his/her parents, or where the officer has reason to doubt the name and address given are true. In the instant case, Officer Ryan never inquired about respondent’s parents; he instead concluded that the respondent may be a runaway because he was in the Port Authority, alone, at a late hour. These are but two of the factors to be considered, according to the holding in Terrence G. (supra). There is nothing further in the instant case to suggest respondent was a runaway: he did not appear lost, confused, disoriented or frightened; he did not try to avoid Officer Ryan; he did not appear nervous; his appearance was clean. Respondent’s alleged "hesitation” and "vagueness” were not unusual for any adolescent being questioned by an adult. Officer Ryan gives no reason for never even inquiring of the respondent his name or the name and address of his parents.
This court is also concerned with the officer’s standard *959 operating procedure of stopping any adolescent who appears to be in the Port Authority alone after 8:00 p.m. While it is possible that the Port Authority, located as it is in the Times Square area and being a terminal for bus travel across the country, may well be a gathering place for runaway children, I do not believe the standards for detention set forth in Family Court Act § 718 and discussed in Terrence G. (supra) justify the de facto imposition of an 8:00 p.m. curfew. The court finds that Officer Ryan did not have probable cause to believe the respondent was a runaway, and therefore, could not search the respondent. However, even if we assume arguendo that such probable cause existed, the search of respondent’s bag was illegal.
When an officer has probable cause to detain a potential runaway child, he may, as previously indicated, conduct a frisk of the child for safety purposes. This "safety frisk” may not, however, extend to a full-blown search of the child’s belongings, as was done here. In the instant case, a pat down of the respondent produced no weapons. The only basis for Officer Ryan’s belief that a weapon may be in the respondent’s bag came from the officer’s claim that runaways are often armed. He persisted in this belief despite the lack of weapons on the respondent’s person. In People v Torres (74 NY2d 224 [1989]), detectives acting on an anonymous tip frisked the occupants of a car, and after such frisk, felt a bag which had been on the front seat of the automobile. When the shape of a gun was felt, the bag was opened and a gun recovered. The Court of Appeals directed suppression of the evidence recovered, holding that "once the detectives had frisked the two men, and had thereby satisfied themselves that there was no immediate threat to their safety, there was, as a matter of law, no justification for conducting a further, more intrusive search extending to the removal of personal effects on the front seat of defendant’s car.” (People v Torres, supra, at 227.)
In People v Gokey (60 NY2d 309 [1983]), the court identified two interests that would justify a warrantless search of property within a defendant’s immediate control incident to a lawful arrest: the safety of the public and the arresting officer, and the protection of evidence from destruction or concealment. In the Gokey case, the defendant was arrested in a bus terminal based upon an informant’s tip that he was carrying contraband. The defendant carried a bag which was searched incident to arrest. The court held that the search was not *960 supported either by the need to insure the officer’s safety or to preserve evidence.
The standard for a search of the respondent’s bag in the instant case, where respondent is not suspected of committing any crime and has been found to have no weapons on his person, should be no less exacting. Absent an independent basis or specific information giving the officer a reasonable belief that the respondent’s bag contained a weapon, the search of the bag was improper. (See, e.g., People v Smith, 59 NY2d 454, where a search of a defendant’s briefcase incident to an arrest was upheld because of independent acts which could lead officers to reasonably believe the defendant possessed a weapon, i.e., he was wearing a bulletproof vest.)
The officer’s testimony here, that upon squeezing the bag he felt a hard rectangular object, does not provide a basis for opening the bag. The conclusion that the object must be a switchblade knife is nothing more than speculation on the officer’s part. The object was not distinctive as a weapon and could have been any number of things people normally carry when they travel: toothpaste, toiletries, pocket flashlight, cigarette lighter, to name just a few. In any event, the safety concerns expressed in Terrence G. (109 AD2d 440, supra) could easily have been satisfied by removing the bag from respondent and holding it aside while his parents were contacted.
Finally, the presentment agency contends that the respondent consented to the search of his bag. In this regard, the presentment agency must establish consent by clear and convincing evidence. (People v Zimmerman, 101 AD2d 294.) The consent to be searched must be free, knowing and voluntary; consent will not be found in acquiescence to a claim of lawful authority. (People v Gonzalez, 115 AD2d 73, affd 68 NY2d 950.)
The Court of Appeals in People v Gonzalez (39 NY2d 122) enumerated four factors to determine the voluntariness of a consent search: (1) whether or not the consentor is in custody; (2) the background of the consentor; (3) the extent to which the consentor cooperated with law enforcement officials; (4) whether the consentor was advised of the right to refuse to consent.
In this instant case, the respondent was in custody and was never advised of his right to refuse consent. Although he cooperated with Officer Ryan, the court must take into consideration that the respondent is a 15-year-old youth. At the time *961 of the alleged consent, he had been told he was going to be detained, and he had been frisked for weapons. The court cannot conclude that the respondent’s purported consent was voluntary and knowing; indeed, it appears that the respondent merely acquiesced to lawful authority.
For all the above reasons, the court concludes that the search of the respondent’s bag was illegal, and the gun clip recovered must be suppressed. The recovery of the weapon itself from the corespondent must likewise be suppressed as the "fruit of the poisonous tree” (Wong Sun v United States, 371 US 471, 488 [1963]). The recovery of the pistol was obtained as a direct result of the illegal police conduct. The respondent was questioned upon the discovery of the gun clip, and his response led to the recovery of the pistol itself. The weapon was recovered through exploitation of the illegal search. Evidence obtained in this manner is not admissible against this respondent and must be excluded. (People v Bigelow, 66 NY2d 417.)
Therefore, respondent’s motion is granted in all respects. Since the respondent is charged solely with possessory crimes, the petition is dismissed.