■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL L. ELDRIDGE, Appellant.—Yesawich Jr., J. Appeal from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered July 26, 1989, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the first degree and criminal sale of a controlled substance in the second degree.

At defendant's trial, there was evidence that the State Police monitored a telephone call in which an unidentified male voice informed a drug purchaser, Kenneth Hostek, that he was at his mother's house and to bring scales if he came to visit. After the call, State Police Investigator Michael Bingel followed Hostek to a house in the hamlet of North Lawrence, St. Lawrence County, owned by Deanna Eldridge, defendant's mother. Carrying a dark bag, Hostek entered the home. A pickup truck similar to one defendant had been seen driving was parked outside the home when Hostek arrived. After leaving the house an hour and 15 minutes later, Hostek was arrested and searched by a State Trooper. A quantity of cocaine was found secreted on his body; a set of scales commonly used for weighing drugs was also discovered inside a black duffel bag in his car.

Hostek's wife subsequently phoned the Eldridge house and asked if she was speaking to "Mike". The voice of the same previously unidentified individual responded affirmatively, and in answer to her questioning told her that Hostek had been there but had since left.

A search of the house, executed pursuant to a telephonically obtained warrant (CPL 690.36), yielded an electronic scale devoid of batteries and more than four pounds of cocaine in an upstairs hall closet. Also found in an upstairs bedroom was a briefcase containing $5,700, a bottle of white powder labeled inosital, which testimony indicated is a diluting substance used to increase the quantity of cocaine, and, under a mattress in the bedroom, cash and a letter in an envelope which had defendant's North Lawrence Post Office box address written at the top left corner and which was marked return to sender. Viewing the evidence in the light most favorable to the People *(see, People v Benzinger,* 36 NY2d 29, 32), we are persuaded that, contrary to defendant's contention, this circumstantial evidence and the inferences reasonably to be drawn therefrom established beyond a reasonable doubt that defendant knowingly and unlawfully sold Hostek one half of an ounce or more of a narcotic drug.

We are also of the view that County Court properly denied defendant's motion to suppress evidence discovered as a result of the execution of the search warrant. The warrant was obtained by Bingel at 11:05 P.M. and executed immediately thereafter. The personal observations made by Bingel, coupled with the fact that the Judge was made aware of the source and reliability of information regarding the search of Hostek and the results of that search, were sufficient to justify issuance of the warrant *(see, People v Tambe,* 71 NY2d 492, 505; *People v Petralia,* 62 NY2d 47, 52, *cert denied* 469 US 852). It is true that the warrant described the premises to be searched as a "white two story residence" which was adjacent to the premises actually searched, a grey house with stucco covering owned by defendant's mother. There was, however, no possibility that the wrong premises would be searched because Bingel, who secured the warrant and was present when it was executed, testified that the house he observed Hostek enter and leave was the very house that was searched *(see, People v Earl,* 138 AD2d 839, 842, *lv denied* 71 NY2d 1026; *People v Brooks,* 54 AD2d 333, 336).

Finally, defendant urges that the warrant was invalid because it was executed after 9:00 P.M. yet on its face does not indicate that nighttime execution is authorized. With respect to this argument, it suffices to note that a transcript of Bingel's warrant application discloses that the issuing Judge granted Bingel's request to strike out that portion of the warrant which restricted its execution between the hours of 6:00 A.M. and 9:00 P.M., and that Bingel simply inadvertently

neglected to do so. Given that the police were dealing with a suspected drug dealer and that drugs, a principal reason for the search, can be disposed of easily and quickly, nighttime execution of the warrant was not improper *(see, e.g., People v Conklin,* 139 AD2d 156, 160, *lv denied* 72 NY2d 1044).

There is no merit to defendant's claim that the prosecutor's summation, to which objection was sustained, deprived defendant of a fair trial. On the other hand, it cannot be seriously disputed that defendant's conviction for first degree criminal possession of a controlled substance (Penal Law § 220.21) cannot stand. There is no evidence that defendant knowingly and unlawfully possessed four ounces or more of a narcotic drug. Defendant was not arrested with the drugs on his person and constructive possession was not shown. The evidence suggests that while defendant, who was living with a girlfriend in the Village of Massena, often visited his mother's residence, so did others, including defendant's two brothers. This evidence was insufficient to justify inferring that defendant exercised dominion and control over the upstairs hall closet in which all of the cocaine discovered by the police was hidden *(compare, People v Cicero,* 106 AD2d 901, *appeal dismissed, cert denied* 472 US 1003, *with People v Vasquez,* 142 AD2d 698, 700, *lv denied* 72 NY2d 1050). The People's failure to connect defendant to the cocaine requires reversal *(see, People v Pearson,* 75 NY2d 1001, 1002).

Judgment modified, on the law, by reversing the conviction for the crime of criminal possession of a controlled substance in the first degree; said count of the indictment dismissed; and, as so modified, affirmed. Weiss, J. P., Yesawich, Jr., Levine, Mercure and Harvey, JJ., concur.