OPINION OF THE COURT
Thomas J. Carroll, J.
*761 On January 3, 4 and 5, 2007, this court conducted a Mapp, Payton, Dunaway and Huntley hearing. On January 8, 2007, it rendered its oral decision. This constitutes the court’s written decision. The court heard the testimony, reviewed the transcript and read relevant case law.
The People called as witnesses Police Officers Jason Ostek and Michael Briggs of the 70th Precinct. The defendant called two witnesses: Antoine Burke, a cousin of the defendant and a New York City Transit Authority bus driver, and Betty Merced, who had provided information to the police of defendant’s whereabouts on the night in question.
On April 9, 2006, at about 9:00 p.m., there was a police communication of a man “stabbed in the past.” Officer Briggs, who first received the call, informed Officer Ostek who thereafter proceeded to Kings County Hospital (KCH) where the complainant was being treated. At KCH, Officer Ostek, and his partner, Officer Niemeyer, interviewed the complainant Marvin Rogers who stated that he had been in an altercation with the defendant, a man known to him as Ninja, and had been stabbed multiple times. Rogers reported that he was stabbed in front of 354 East 21st Street, that he knew Ninja from the neighborhood and that defendant might be found “at 354 East 21st Street, Betty’s house.”
Officer Ostek went to that address and spoke to Betty. According to Officer Ostek, Betty said she saw the defendant earlier and that the defendant had said he was going to his mother’s house at 2016 Albemarle Road, apartment 3-G. Later, Officer Ostek testified it was apartment 5-G, as did Officer Briggs. When asked if Betty accompanied them to the house of the defendant or defendant’s mother, Officer Ostek answered, “Not that I recall, no, sir.”
Betty Merced testified for the defendant. She said she had prior criminal convictions for drugs, “open container” of beer and “using the light without” the landlord’s permission. She admitted she had used alcohol and drugs on the day in question and also at 3:00 p.m. the day before she testified at this hearing. She also stated she had been in a rehabilitative program with defendant’s mother. Prior to April 9, 2006, she had a social relationship with both the defendant and the complainant.
Betty testified that as she was climbing the stairs to her apartment at 354 East 21st Street, a police officer approached her and began speaking to her. At the time, she was in the company of two male friends who were carrying a wall unit while she was *762 carrying her cat. According to her, they all entered her apartment and one police officer said that she must take them to where defendant lived. In response, she told them that she only knew where the mother resided but did not know her exact address. An officer then stated that she would be arrested along with her two friends and her cat if she did not lead them to the defendant’s mother’s house. She said that because she was scared she complied. Officer Ostek did not recall Betty being at 2016 Albemarle Road.
According to Officer Ostek, more police officers were called and he and Officer Niemeyer met them, including Officer Briggs, at 2016 Albemarle Road.
An officer or officers knocked on the door and a woman who Officer Ostek believed to be defendant’s mother answered the door.* Officer Ostek did not recall who actually knocked on the door or rang a doorbell. Officer Ostek did not recall if the voice behind the door first asked “who is it” or “what do you want” or if the door just opened. Officer Briggs did not recall if someone knocked or buzzed and did not hear any conversation before the door opened.
According to Officer Ostek: “We asked his mother if we got permission to search the house. We described the situation taking place, that her son was involved in an altercation. She said yes. She opened up the door, stood back, and pointed to the rear of the household.” After the door was opened, Officer Briggs “did not hear any conversation, sir.”
Officer Ostek further testified, “I don’t recall who spoke the first words, whether it was the officers or the woman who answered the door.” Shortly thereafter he testified, “I believe her first response was — I don’t recall what her first exact response was.” The first response that Officer Ostek did recall was the woman stepping back from the door, opening it and pointing to the rear of the household without saying anything. Officer Ostek testified, “Sir, I don’t recall any exact words. I just recall the product of the conversation.”
Officer Ostek also testified as follows about when he saw a woman at the door:
“A. We asked her if her son was in the apartment.
“Q. What did she say?
“A. She said — I don’t recall.
*763 “Q. Did there come a time—
“the court: I am sorry? What did she say?
“the witness: I don’t recall, sir.”
Officer Ostek testified, “[w]e asked her for permission to search her apartment for her son.” When asked by the court as to what she said, Officer Ostek testified, “[s]he said okay and opened up the door and pointed to the rear of the apartment.” Officer Ostek does not recall the woman asking if the police had a warrant.
According to Antoine Burke, defendant’s mother, Carol Mason, was his aunt. Burke testified that he was present in defendant’s mother’s apartment the night the police came to arrest the defendant. He testified he heard the defendant’s mother ask the police if they had a warrant to which they responded that they did not need a warrant.
The officers then entered the apartment but Officer Ostek does not recall who was the first officer to enter. An officer found someone in the bathroom hiding behind the shower curtain. Officer Briggs testified “I found a gentleman in the bathroom.” However, on cross-examination, Officer Briggs testified that his first glimpse of the defendant was “[a]s he was escorted out of the bathroom and placed in handcuffs.” According to Officer Ostek, he placed the defendant in handcuffs. Officer Ostek stated that he then frisked the defendant and found a pair of scissors in his rear pocket.
While placing the defendant in handcuffs, Officer Ostek noticed a cut on the defendant’s hand. As Officer Ostek was walking the defendant out of the apartment, he asked the defendant how he got the cut on his finger. The defendant responded that “he got it from working on his bicycle.”
Outside the apartment, Officer Ostek also noticed red speckles on the defendant’s pants. At or about that time, Officer Ostek had a conversation with the defendant about which he testified as follows:
“Q. What did you say to the defendant?
“A. We asked him if he was involved in any kind of argument.
“Q. What was his response?
“A. His response was: I was involved in an argument but I didn’t stab him.”
After the statement, the defendant was then taken outside the building where Officer Briggs photographed him.
Officers Ostek and Briggs then drove to KCH and showed the photograph to the complainant Rogers who identified the person *764 in the photograph as the individual who had stabbed him. Officer Briggs then called his partner Officer Civil, who was with the defendant outside of 2016 Albemarle and told Officer Civil that there was a positive identification. At that point, according to Officer Ostek, the defendant was placed under arrest.
Officer Ostek acknowledged the officers did not have an arrest warrant or a search warrant. No effort was made to obtain either warrant. Officer Ostek testified they did not obtain a warrant because they were afraid the defendant would flee.
While Officer Briggs was fingerprinting the defendant at the precinct, he observed cuts on the defendant’s left hand. Officer Briggs asked the defendant what happened. The defendant stated he received them fixing a knife.
In addition to the scissors which were seized in the apartment, after the defendant was arrested, the police also seized the defendant’s pants on which they observed red speckles.
Findings of Fact and Conclusions of Law
The Fourth Amendment prohibits the police from making a warrantless entry into an individual’s home in order to make a routine felony arrest (Payton v New York, 445 US 573, 576 [1980]). Probable cause to make such an arrest is alone not enough to circumvent the warrant requirement (Payton v New York, supra; Kirk v Louisiana, 536 US 635 [2002]).
One of the exceptions to the rule in Payton authorizes the police to make a warrantless arrest in a person’s home if they obtain voluntary consent to enter the premises. The burden of proving consent is a heavy one and rests squarely on the prosecution (People v Whitehurst, 25 NY2d 389 [1969]; People v Gonzalez, 39 NY2d 122 [1976]). “Consent to search is voluntary when it is a true act of the will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle” (People v Gonzalez at 128 [citations omitted]). Whether consent is given voluntarily is a question of fact to be determined by the totality of the circumstances (People v Gonzalez at 128-130; People v Zimmerman, 101 AD2d 294, 295 [2d Dept 1984]). Consent must be proven by clear and convincing evidence (People v Zimmerman, supra).
In this instance the prosecution has failed to meet its burden. The police testimony about what transpired before they entered the apartment to apprehend defendant is overly vague. Officer Ostek could not recall who spoke first, what defendant’s mother *765 said in response to his request to enter the apartment or whether the question of a warrant was raised. Officer Briggs testified that even though he was present at the scene he heard nothing. In contrast, Mr. Burke heard defendant’s mother distinctly ask about a warrant as well as hearing the response by the police that a warrant was unnecessary. Moreover, Ms. Merced, who Officer Ostek could not recall being present despite leading them to the apartment, also claimed to have heard mention of a warrant.
Upon balancing most notably the credible testimony of Mr. Burke on one side of the equation against the vagueness of the police officers on the other side, this court reaches the conclusion that the question of the warrant was raised by the mother but was not responded to by the police. By ignoring the mother’s question, the police, in effect, acted as though the mother had no right to resist the search of her home. “Where there is coercion there cannot be consent” (Schneckloth v Bustamonte, 412 US 218, 234 [1973]).
In the absence of consent the warrantless police entry was a Payton violation. Therefore, the physical evidence recovered as well as the statements made by the defendant were unlawfully obtained and must therefore be suppressed.
Accordingly, the defendant’s motion to suppress the statements and physical evidence is granted.

 Defendant’s mother, Carol Mason, died before this hearing was conducted.